# EXHIBIT 1

# Complaint

This electronic document is the official court record (GC68150)

Electronically Filed
3/3/2025 4:37 PM
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
CLERK OF THE COURT
By: Shara Hunter, Deputy

CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SUTTER**

CHRISTY BODILY, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

UNIVERSAL TEA COMPANY, INC.,

Defendant.

Case No. CVCS25-0000524

**CLASS ACTION COMPLAINT FOR:**

1. Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;
2. Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and
3. Breach of Implied Warranties

DEMAND FOR JURY TRIAL

This electronic document is the official court record (GC68150)

Plaintiff Christy Bodily ("Plaintiff") individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, hereby brings this action against Universal Tea Company, Inc. d/b/a Stash Tea ("Defendant") and upon information and belief and investigation of counsel, alleges as follows:

**SUMMARY OF DEFENDANT'S UNLAWFUL & DECEPTIVELY ADVERTISED PRODUCTS**

1. Defendant manufactures, distributes, advertises, markets, and sells a line of "Stash" teas which are packaged in tea bags (the "Products"). An example of the Products' packaging is below:

2. The problem is the tea bags in the Products are highly contaminated with dangerous synthetic chemicals called per- and polyfluoroalkyl substances ("PFAS"), also known

This electronic document is the official court record (GC68150)



as forever chemicals. PFAS are a group of surfactants used to waterproof consumer products like pans, paints and packaging – and apparently Defendant's teabags.[1]

***PFAS in the Products Are Unlawful and Present an Unreasonable Safety Hazard***

3. PFAS are stable, inert, and resistant to degradation owing to their strong C–F bonds.[2] PFAS "accumulate in living organisms because of their high resistance to degradation (Suja et al., 2009). The adverse health effects of PFAS have become an emerging health and safety concern in recent years."[3]

4. A recent study, funded in part by the National Institutes of Health and led by researchers at the Keck School of Medicine of the University of Southern California, uncovered key details about the link between PFAS and diet.[4] The researchers found that greater consumption of tea, was associated with increased levels of PFAS in the body over time. The study involved over 7000 subjects and investigated certain food consumption (including drinking tea) with PFAS level in blood serum. "[P]articipants who reported higher tea consumption during the first visit had higher levels of PFAS at the follow-up visit (one additional serving of tea was linked to 24.8% higher perfluoro- hexanesulphonic acid (PFHxS), 16.17% higher perfluoroheptanesulfonic acid (PFHpS) and 12.6 % higher perfluorononanoic acid (PFNA))."[5]

---

[1] https://www.technologynetworks.com/applied-sciences/articles/from-pfas-to-microplastics-what-might-be-leaking-out-of-your-teabag-383985

[2] Aishwarya Jala, Daya Raju Adye, Roshan M. Borkar, Occurrence and risk assessments of per- and polyfluoroalkyl substances in tea bags from India, Food Control, Volume 151, 2023, 109812, ISSN 0956-7135, https://doi.org/10.1016/j.foodcont.2023.109812.

[3] *Id.*

[4] Abrams Z., Longitudinal study links PFAS contamination with teas, processed meats and food packaging. Keck School of Medicine USC (Feb 5, 2024).

[5] *Id.*

This electronic document is the official court record (GC68150)

CROSNER LEGAL, P.C.

5.    Due to their confirmed dangerous health effects, California law[6] prohibits the "presence of PFAS in [food product packaging] at or above 100 parts per million, as measured in total organic fluorine." Cal. Health & Saf. Code § 109000(a)(3)(B). It also prohibits manufacturers from intentionally adding PFAS to food packaging. Cal. Health & Saf. Code § 109000(a)(3)(A). The law requires "a manufacturer to use the least toxic alternative when replacing regulated perfluoroalkyl and polyfluoroalkyl substances or PFAS in food packaging to comply with this requirement." Cal. Health & Saf. Code § 109000(c). Defendant violates this law.

6.    Here, the tea bags in the Products are considered "food packaging." *See* Cal. Health & Saf. Code § 109000(a)(1). Further, the tea bags have been tested by an EPA-certified lab that found the tea bags contain **388 ppm in total fluorine**—***over three times the California limit***.[7]

7.    Experts have concluded that if a product has over 20 ppm of total Fluorine, then the producer has intentionally added PFAS.[8] Thus, the tests results show that Defendant has purposefully added PFAS to the Products. Insofar as it made its way into the Products by accident, it follows that it was due to inadequate manufacturing process controls by either Defendant and/or its agents.

---

[6] Washington also bans the use of intentionally added PFAS in food packaging. RCW 70A.222.070.

[7] Segedie, L. *Earl Grey Teas Tested for PFAS "Forever Chemicals" — Guide* (Dec. 17, 2024) available at https://www.mamavation.com/food/earl-grey-tea-pfas.html.

[8]    Kevin Loria, *Dangerous PFAS Chemicals Are in Your Food Packaging*, Consumer Reports (May 2022) available at: https://www.consumerreports.org/health/food-contaminants/dangerous-pfas-chemicals-are-in-your-food-packaging-a3786252074/

3

This electronic document is the official court record (GC68150)

8. The migration of PFAS from food packaging material is well documented.[9] Thus, "tea bags are a source of exposure to PFAS."[10] This is an unknown safety hazard for Defendant's consumers because PFAS are harmful to human health and the environment.

9. PFAS are not well known by the average tea-drinking consumer and Defendant's customers are unaware that they are at a substantial risk for drinking PFAS along with their tea. Indeed, a scientific study was conducted to determine whether those who consume tea had PFAS in their blood.[11] The study found that those that consume tea are more likely to have high levels of PFAS in their blood compared to those who did not drink tea.[12]

10. Another scientific study examined the risk of PFAS in tea bags.[13] The researchers concluded that there is a significant probability that a "considerable amount" of PFAS can be absorbed into the body from drinking tea with PFAS contaminated tea bags.[14]

11. The U.S. Centers for Discase Control (CDC) has noted that PFAS can be linked to increases in cholesterol, changes in liver enzymes, small decreases in birth weight, lower

---

[9] Aishwarya Jala, Daya Raju Adye, Roshan M. Borkar, Occurrence and risk assessments of per- and polyfluoroalkyl substances in tea bags from India, Food Control, Volume 151, 2023, 109812, ISSN 0956-7135, https://doi.org/10.1016/j.foodcont.2023.109812 (citing published research).

[10] *Id.*

[11] Hailey E. Hampson, Elizabeth Costello, Douglas I. Walker, Hongxu Wang, Brittney O. Baumert, Damaskini Valvi, Sarah Rock, Dean P. Jones, Michael I. Goran, Frank D. Gilliland, David V. Conti, Tanya L. Alderete, Zhanghua Chen, Leda Chatzi, Jesse A. Goodrich, Associations of dietary intake and longitudinal measures of per- and polyfluoroalkyl substances (PFAS) in predominantly Hispanic young Adults: A multicohort study, Environment International, Volume 185, 2024, 108454, ISSN 0160-4120, https://doi.org/10.1016/j.envint.2024.108454.

[12] *Id.*

[13] Aishwarya Jala, Daya Raju Adye, Roshan M. Borkar, Occurrence and risk assessments of per- and polyfluoroalkyl substances in tea bags from India, Food Control, Volume 151, 2023, 109812, ISSN 0956-7135, https://doi.org/10.1016/j.foodcont.2023.109812.

[14] *Id.*

This electronic document is the official court record (GC68150)

antibody response to vaccines, pregnancy-induced hypertension and preeclampsia, and both kidney and testicular cancer.[15]

12. Recent studies have shown the relation between serum levels and liver, pancreatic, testicular, and breast cancer, tumor-promoting activities, immunosuppression, estrogenic and non-estrogenic hormonal disruptions, among other adverse effects to human health. PFAS have been linked to several health effects, including developmental problems, liver and kidney damage, and an increased risk of certain cancers. Studies have shown increased triglycerides and other hormonal health effects, identifying certain PFAS as a thyroid hormone disruptor. Epidemiological studies have specifically linked exposure to PFAS with kidney and testicular cancer, low birth weight, thyroid disease, and immunotoxicity in children.

13. The University of California Los Angeles has published research which concluded: "Studies have linked PFAS to adverse health effects, including high blood pressure, decreased fertility in women, liver damage, cancer, low birthweight and an increased risk of asthma and thyroid disease."[16]

14. In fact, the House of Representatives has introduced legislation to ban PFAS from food containers and cookware. *See* Keep Food Containers Safe from PFAS Act of 2019, H.R. 2827, 116th Cong. (2019). The legislation states that PFAS should be "deemed unsafe."

15. The Senate has introduced legislation which would require the Environmental Protection Agency ("EPA") to designate PFAS substances as "hazardous substances." Prevent Future American Sickness Act of 2020, S. 3227, 116th Cong. (2020).

***PFAS Are Horrible for the Environment***

16. PFAS are also horrible for the environment and are not considered environmentally friendly.

17. The chemical stability of PFAS, a result of the strength of bonds of carbon and

---

[15] What are the health effects of PFAS?, https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed April 17, 2024).

[16] UCLA Center for Human Nutrition, *Eating microwave popcorn increases the level of PFAS in body* (August 5, 2022).

This electronic document is the official court record (GC68150)

fluorine in the compounds, means that they barely degrade under natural conditions and, even when partial degradation occurs, residues persist for periods of time so long — from decades to centuries or even longer — which is why they are called "forever chemicals."[17]

18. Research on PFAS has demonstrated "harm to aquatic animals, amphibians and insects even at small concentrations, as well as significant accumulation within the bodies of organisms and in food webs."[18] PFAS researchers have "published a 13-point list of reasons for a complete phase-out of PFAS, and the development of fluorine-free alternatives. They summarized both the immediate risks and potential legacies of continued use of the substances, as well as a number of knowledge gaps around potential risks that they suggest means that anything short of the suggested phase-out is inadequate."[19]

19. PFAS in soil (where Defendant's PFAS contaminated tea bags will eventually end up) pose a direct contact risk to humans or result in chemicals entering the groundwater and surface water.[20]

20. "Stopping the production, use, and release of PFAS is still the most efficient method to protect the public and environment from PFAS exposure and harm."[21]

***The Products' Label Represents that the Products Do Not Contain PFAS***

21. Instead of informing consumers of the high levels of PFAS, Defendant labels the Products with several representations indicating the Products are safe to consume and are good for the environment.

---

[17] "Science for Environment Policy": European Commission DG Environment News Alert Service, edited by the Science Communication Unit, The University of the West of England, Bristol.

[18] *Id.*

[19] *Id.*

[20] Wisconsin Department of Natural Resources, *Environmental and Health Impacts of PFAS*, available at https://dnr.wisconsin.gov/topic/PFAS/Impacts.html

[21] Natural Resources Defense Council*, PFAS Are Still Forever (and Not Your Best Friend)* (Sept. 29, 2022) available at https://www.nrdc.org/bio/anna-reade/pfas-are-still-forever-and-not-your-best-friend

This electronic document is the official court record (GC68150)

22. For example, on the Products' packaging, Defendant claims that its Products are "environmentally friendly" and "made with quality ingredients, are kosher certified, and gluten-free" as well as "Non-GMO" (see above picture) (together, referred to as the "**High Quality and Environmentally Friendly Representations**":

OPEN. SIP. SMILE. REPEAT.
This box is recyclable and printed with
environmentally-friendly vegetable-based inks.
All of our teas are made with quality ingredients,
are Kosher certified, and gluten-free.

CROSNER LEGAL, P.C.

7
CLASS ACTION COMPLAINT

This electronic document is the official court record (GC68150)

CROSNER LEGAL, P.C.

EXPLORE
— OUR —
WORLD OF TEA
Welcome to our world of tea. We know tea is your catalyst for strength, comfort, energy, and moments of serenity—it is for us too. That's why it's our life's work to share the joy of tea with the world. We believe tea should do more than just satisfy—it should take you on a flavorful journey.
STASH
TEA COMPANY
stashtea.com
— OPEN TO BRING YOUR TASTE BUDS TO LIFE

23. Defendant also uses extra-label advertising to convey its intended message that the Products do not contain harmful ingredients that the Products are environmentally friendly:

8
CLASS ACTION COMPLAINT

This electronic document is the official court record (GC68150)

CROSNER LEGAL, P.C.

BREWING UP
Goodness.

NON GMO Project
VERIFIED
nongmoproject.org
Certified
Non-GMO

K
Certified
Kosher Parve

Compostable
Tea Bags

Made with 50%
Renewable Energy

***Defendant's Website Shows Defendant's Intended Labeling Message***

24. On its website, Defendant states:

What is the filter paper made of that you use in your tea bags?
The filter paper used for Stash Tea bags is made from 100% cellulose fibers (wood). Test results conclude that chlorine dioxide is not present in our tea bag filter paper. The filter paper is not coated with the compound epichlorohydrin, and does not contain any free epichlorohydrin. Stash tea bag filter paper is machine folded and pressed, therefore no glue is needed or used.

25. Defendant impliedly represents the Products do not contain PFAS: "Stash Tea makes every effort to procure ingredients for its teas that are pesticide-free. Stash Tea continues to build its global network of suppliers and works hard to select those suppliers who minimize or have eliminated the use of pesticides in their growing of tea, herbs, and spices. We regularly

This electronic document is the official court record (GC68150)

CROSNER LEGAL, P.C.

test for pesticides and other chemicals that are commonly used on crops. Pesticides used on crops must be considered 'food safe' and must meet strict FDA standards for that particular crop. As with other leading tea companies around the world, Stash Tea adheres to best practice food safety guidelines when procuring its teas, herbs, and spices. Stash Organic teas are grown without the use of any synthetic pesticides, fertilizers, or herbicides."

26. Defendant impliedly represents the Products do not contain PFAS: "Stash Tea supports the position of the Tea Association of the USA in noting that tea continues to not only be one of the most consumed beverages in the world—second only to water—but also continues to be a safe and healthful beverage. … The teas that Stash Tea produces are 100% safe to consume. We procure our teas and herbs from the highest quality sources around the world. Our suppliers must adhere to a strict Supplier Code of Conduct and sign our Supplier Agreement in order to achieve our 'preferred vendor' status. If suppliers cannot supply critical and vital documentation that supports their practices and values, we do not do business with them. As with many other leading tea companies, Stash Tea regularly tests our teas for lead and other compounds. The results of our on-going testing indicate that the amount of lead in dry tea leaves is nearly undetectable, and in a brewed cup of tea, recent testing showed 'no detectable presence' of lead, arsenic, cadmium or mercury. We understand the desire to learn as much as possible about lead in consumable products. As we network with other leading tea companies and with our tea growers, we will continue to gather accurate and factual information to share with our customers."

27. Defendant impliedly represents the Products do not contain PFAS: "How do you ensure the purity and quality of your teas? Since 1972, we've been proud to offer our customers high-quality teas—that's our commitment and our mission. We adhere to several policies to ensure our tea is of the finest and purest quality. First, we buy our teas directly from the world's premier tea gardens and only conduct business with reputable suppliers, most of whom we have worked with for years. We also require every vendor to sign a certificate of compliance based on U.S. Food and Drug Administration (FDA) and Environmental Protection Agency (EPA) regulations. We also set equally high standards for our herbal and spiced teas by purchasing

This electronic document is the official court record (GC68150)

herbs and spices whole from the world's best sources. We mill them right before blending for superior taste and flavor. They are also tested according to strict guidelines set by the American Spice Trade Association, the Food and Drug Administration, and our own stringent guidelines. The flavors and extracts used in our teas are always 100% natural. In addition, our line of organic teas is certified organic by the USDA and Quality Assurance International (QAI). QAI is an internationally recognized professional organic certification service. Their program certifies that every step in the life of a food product is organic—from the land where the product is grown, to the growers' practices, to the post-harvest facilities and to the final processing and handling."

28. Defendant uses the High Quality and Environmentally Friendly Representations as the primary feature differentiating the Products from other tea products in the marketplace. The net-effect or net-impression of the Products' labeling on consumers is that the Products do not contain substances harmful to human health and the environment like PFAS.

29. Reasonable consumers are deceived into thinking that Defendant has not purposefully and/or negligently added PFAS to the Products. Accordingly, Defendant's representations and omissions are deceptive and likely to deceive reasonable consumers. Defendant's advertising and marketing campaign is designed to cause consumers to purchase the Product as a result of this deceptive message. Further, Defendant has omitted material information related to an unreasonable safety hazard and failed to disclose to consumers that it has intentionally and/or carelessly added PFAS to the Products.

30. Like other consumers, Plaintiff purchased Defendant's Stash Teas (tea bags) Products at retail stores in California and was deceived by Defendant's unlawful conduct. Plaintiff would not have purchased the Product if she had known that the Products contained toxic PFAS.

31. Plaintiff brings this action individually and on behalf of United States consumers to halt the deceptive sale of the Products (primary objective) and to obtain a refund of the Products' price for all United States consumers that bought the Products during the putative class period.

This electronic document is the official court record (GC68150)

## JURISDICTION AND VENUE

32. This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

33. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant has its principal place of business in Pomona, California.

34. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

35. Venue is proper in this county pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this county as the Products are offered for sale in this county. Plaintiff purchased a Product in this county during the proposed class period.

## PARTIES

36. Defendant is an Oregon company but maintains its principal place of business at 122 Voyager Street, Pomona, California (see CA Entity No. 1868341). Defendant's name is listed on the Products and references Defendant's website stashtea.com. The Products are sold at retail stores throughout the United States as well as direct to consumer on Defendant's website. Defendant is the manufacturer, distributor, marketer, and seller of the Products.

37. Defendant states this about the Stash branded teas: "our teas are made with healthful, plant-based ingredients that will leave you feeling your best. We take purposeful measures to ensure our products are non-GMO certified, and our teabags are free of microplastics. When it comes to packaging, you can sip peacefully knowing our boxes are recyclable, and our tea bags are compostable, made from all-natural, unbleached fiber."[22]

38. Plaintiff is a resident of California. Plaintiff has purchased a variety of the Stash Teas packaged in tea bags over the years at retail stores in California. Most recently, around

[22] https://www.stashtea.com/pages/about-us

This electronic document is the official court record (GC68150)

December 2024, Plaintiff purchased the Products at a Walmart retail store near Yuba City, California.

39. When purchasing the Product, Plaintiff saw and relied on the "environmentally friendly" and "made with quality ingredients, are kosher certified, and gluten-free" as well as "Non-GMO" statements on the labels of the Products. These representations gave Plaintiff the net-impression that the Product was not contaminated with chemicals known to be harmful to humans and the environment. Plaintiff would not have purchased the Product had she known that the Product contained PFAS. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Product she would not have purchased, absent Defendant's misconduct.

40. Plaintiff continues to see the Products for sale at retail stores near her residence and desires to purchase the Products again if the Products did not contain PFAS. However, as a result of Defendant's ongoing misrepresentations, Plaintiff will be unable to rely on Defendant's advertising when deciding in the future whether to purchase the Products despite the fact that Defendant's Products were once marred by deceptive labeling, as she may reasonably, but incorrectly, assume the Product was improved.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

41. Consumers, like Plaintiff, relied on Defendant's High Quality and Environmentally Friendly Representations. The High Quality and Environmentally Friendly Representations on the labels of the Products are material to reasonable consumers. The advertising and labeling of the Products gives reasonable consumers the net impression that the Products are good for them and safe for the environment. Consumers, like Plaintiff, read and relied on High Quality and Environmentally Friendly when making the decision to purchase the Products.

42. Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised.

This electronic document is the official court record (GC68150)

CROSNER LEGAL, P.C.

Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain PFAS.

**CLASS ACTION ALLEGATIONS**

43. Plaintiff brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following Class:

> All persons who purchased the Products for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated.

44. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

45. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

46. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

48. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

This electronic document is the official court record (GC68150)

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

49. Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

50. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

51. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

This electronic document is the official court record (GC68150)

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

52. Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

53. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

54. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

This electronic document is the official court record (GC68150)

**FIRST CLAIM FOR RELIEF**

Violation of California's Consumers Legal Remedies Act

Cal. Civ. Code §§ 1750 *et seq*. ("CLRA")

55. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

56. Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

57. At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

58. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

59. At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

60. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

61. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling with the High Quality and Environmentally Friendly Representations. Defendant failed to disclose that the Products contain harmful PFAS chemicals. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products are of high quality and are environmentally friendly to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

This electronic document is the official court record (GC68150)

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

62. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

63. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

64. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

65. Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant failed to respond to the letter after 30-days of receipt of the letter, and thus, Plaintiff seeks claims for actual, punitive, and statutory damages, as appropriate.

66. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

**SECOND CLAIM FOR RELIEF**

Violations of California's Unfair Competition Law ("UCL")

Cal. Bus. & Prof. Code §§ 17200, *et seq*.

67. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

68. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

69. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of

This electronic document is the official court record (GC68150)

California Business & Professions Code section 17200), as set forth more fully herein, and violating California Civil Code sections 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq*., and California common law breach of implied warranties.

70. More specifically, Plaintiff brings a claim under the UCL's unlawful prong because the sale of the PFAS contaminated tea bags violates California's Health and Safety Code. California law prohibits the "presence of PFAS in [food product packaging] at or above 100 parts per million, as measured in total organic fluorine." Cal. Health & Saf. Code § 109000(a)(3)(B). It also prohibits manufacturers from intentionally adding PFAS to food packaging. Cal. Health & Saf. Code § 109000(a)(3)(A). Here, the tea bags in the Products are considered "food packaging." *See* Cal. Health & Saf. Code § 109000(a)(1). Further, the tea bags have been tested by an EPA-certified lab that found the tea bags contain **388 ppm in total fluorine**—***over three times the California limit***.[23]

71. Plaintiff, individually and on behalf of the other class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

72. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised. Further, Defendant failed to disclose a material fact (the addition of PFAS to the Products) of which had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false

[23] Segedie, L. *Earl Grey Teas Tested for PFAS "Forever Chemicals" — Guide* (Dec. 17, 2024) available at https://www.mamavation.com/food/earl-grey-tea-pfas.html.

This electronic document is the official court record (GC68150)

misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy (indeed, California law prohibits food packing that contains more than 100 ppm organic fluorine).

73. There were reasonably available alternatives to further Defendant' s legitimate business interests, other than the conduct described herein. For example, Defendant's competitors sell tea in bags that do not contain PFAS. Harney & Sons Master Tea Blenders Earl Grey Flavored Black Tea, Mighty Leaf Organic Earl Grey Smooth Black Tea, The Republic of Tea Earl Greyer Full-Leaf Loose Black Tea Premium Quality Black Tea Leaves and Natural Oil of Bergamot, Two Leaves and a Bud 50 Naked Sachets Earl Grey Whole Leaf Black Tea, and FGO Organic Earl Grey Loose Leaf Tea Plant-Based Full-Bodied Flavor with a Touch of Bergamot have been tested for PFAS and contain significant levels of organic fluorine when compared to Defendant's Products.[24]

74. Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Product set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Product does not contain added and/or carelessly added hazardous substance such as PFAS.

75. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Product. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices. No reasonable consumer would pay money for contaminated PFAS tea when there are several options of other tea on the market that do not utilize tea bags that contain high levels of PFAS.

76. Defendant's wrongful business practices and violations of the UCL are ongoing.

---

[24] *Id.*

This electronic document is the official court record (GC68150)

77. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

78. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

79. Plaintiff seeks attorneys' fees and costs for violations of the UCL pursuant to Cal. Code of Civ. Proc. § 1021.5.

## **THIRD CLAIM FOR RELIEF**

Breach of Implied Warranties

80. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

81. Plaintiff brings this claim on behalf of the Class under the implied warranty laws of California.

***Implied Warranty of Fitness For A Particular Purpose***

82. "An implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985).

83. Defendant was at all relevant times the manufacturer, distributor, and/or

This electronic document is the official court record (GC68150)

warrantor of the Products. Defendant knew or had reason to know of the specific use for which its Products were purchased.

84. Defendant, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Products made implied representations to Plaintiff and the Class that the Products were fit for the particular purpose of use: that consumers can safely consume the Products. However, the Products are hazardous to consume and are unlawfully sold.

***Implied Warranty of Merchantability***

85. At the time the Products were sold, Defendant knew or should have known that Plaintiff and members of the Class would rely on Defendant's skill and judgment regarding the safety and composition of the Products. Because the Products contain unlawful levels of PFAS, they are not of the same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Products are used (i.e., to be soaked and water and then consumed).

86. The implied warranty of merchantability "provides for a minimum level of quality" in a good. *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 n. 2 (1995).

87. To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015); *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used."). "Such fitness is shown if the product is in safe condition and substantially free of defects[.]" *Mexia*, 174 Cal. App. 4th at 1303.

88. "In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, *3 (N.D. Cal. Nov. 12, 2014).

This electronic document is the official court record (GC68150)

89. Here, the Products are consumed. The Products contain a dangerous substance which compromises the safety and fitness for consuming the Products. *See Barnes*, 2022 WL 4283779, at *8 (finding breach of implied warranty sufficiently pleaded where plaintiffs alleged that the product promoted a healthy pregnancy but was actually contaminated with heavy metals and was thus not favorable for pregnancy); *Rodriguez v. Mondelez Glob. LLC*, 703 F.Supp.3d 1191, 1212-13 (S.D. Cal. 2023) (same where plaintiffs alleged that the products were unsafe for consumption because they contained levels of lead or cadmium).

90. By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant.

91. Defendant's labeling and advertising, combined with the implied warranty of merchantability, constitute a warranty that the Products do not contain hazardous substances such as PFAS.

92. In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiff and members of the Class purchased the Products to be consumed. Defendant knew that the Products would be purchased and used without further testing by Plaintiff and Class members.

93. Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Products for and specifically marketed the Products to consumers. Defendant breached the implied warranty of merchantability. Because the Products contain substantial amounts of PFAS, they are not fit for ordinary use (i.e., consumption).

94. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.

95. Further, Plaintiff and members of the Class have suffered and continue to suffer

This electronic document is the official court record (GC68150)

economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result. Injunctive relief is the primary goal of this litigation.

96. Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

This electronic document is the official court record (GC68150)

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

e. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: March 3, 2025

CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*
CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com

Attorneys for Plaintiff